**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HEATHER RANEE CARR,** | : | **Civil No. 4:24-CV-945** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,**[1] | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.   Introduction

A claimant's ability to perform the mental demands of the workplace are often essential to the disability determination. Therefore, when an individual's ability to perform simple and complex tasks are at issue in a Social Security appeal, it is incumbent upon the Administrative Law Judge (ALJ) hearing this disability claim to provide a logical bridge between the evidence and the ALJ's legal conclusions and factual findings, a logical nexus which addresses the claimant's mental limitations in these areas and explains how they do not preclude employment. These

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

legal conclusions and factual findings are typically supported and guided by the opinions of medical experts. On this score, although it is ultimately the ALJ who makes the RFC determination, and determines which medical opinions and evidence deserve greater weight, it is also well-settled that, when evaluating medical opinions, an ALJ should refrain from substituting his own lay opinion in place of a medical opinion. See Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000).  Moreover, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason,'" Id. at 317 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). Thus, in a case such as this where an ALJ has eschewed the opinions of all medical experts in favor of his own interpretation of the record without a valid explanation, a remand is necessary.

We are reminded of these familiar principles in the instant case. In this case, the ALJ found that the plaintiff, Heather Ranee Carr, was not disabled and was capable of performing routine two or three step tasks or instructions despite the consensus of credible medical experts opining she was, at most, capable of performing one to two step tasks. Indeed, the ALJ found the two state agency opinions stating Carr was limited to one to two step tasks persuasive yet did not address why he did not adopt this limitation and instead concluded Carr was capable of doing more, namely two to three step tasks. Thus, the ALJ rejected the complete

2

medical consensus in favor of his own interpretation of the evidence and concluded the claimant could do more than any other medical expert has said she can do. In our view, the ALJ's analysis both "reject[s] evidence for no reason," <u>Morales</u> at 317, and does not provide a complete logical bridge for the decision denying benefits to the plaintiff. This was error. Therefore, we will order this case remanded for further consideration by the Commissioner.

## II.    <u>Statement of Facts and of the Case</u>

### A. <u>Introduction</u>

On November 5, 2021, Heather Carr filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning August 10, 2018. (Tr. 17). In this application Carr alleged that she was disabled due to an array of impairments, including chronic left sided pain, dizziness, bloating, fatigue, IBS, and a learning disability. (Tr. 23). Carr was born on November 18, 1977, and was forty years old at the time of the alleged onset of her disability, making her a younger worker under the Commissioner's regulations. (Tr. 30). She had at least a high school education and prior employment in the retail industry. (Tr. 44)

### B. <u>Carr's Mental Impairments and the Expert Opinions Regarding Her Limitations.</u>

The longitudinal medical record reveals that Carr has a full-scale IQ of 66, within the borderline range with a possible learning disability. (Tr. 1074). She also

suffers from anxiety resulting from a history of verbal abuse, making her hesitant and anxious communicating with others, (Tr. 1075), and testified to difficulty focusing due to ADHD. (Tr. 54).

The ALJ summarized the medical evidence and Carr's activities of daily living and subjective statements regarding her mental impairments in concluding that Carr had moderate limitations in all areas of mental functioning. As the ALJ explained:

> In understanding, remembering or applying information, the claimant has a moderate limitation. The claimant has alleged experiencing difficulty learning (Exhibit 10F). Cognitive testing indicated findings consistent with cognitive deficits, including a Full Scale IQ score of sixty-six, a processing speed index of sixty-eight, a working memory index of seventy-one, a perceptual reasoning index of seventy-three, and a verbal comprehension index of seventy-two (Exhibit 10F).
>
> However, she reported that she does not need special reminders to take care of hers personal needs and grooming, she does not need help or reminders to take medication, she does not need to be reminded to go places, she is able to pay bills, count change, use checkbook/money orders, and handle a savings account, she is able to follow written instructions "fine", she is able to follow spoken instructions well, and her hobbies include watching television and reading (Exhibits 6E and Testimony of Heather Ranee Carr). The claimant's medical records indicate the claimant has been assessed with clinical examination findings of a coherent thought process, an intact recent memory, an intact remote memory, and a normal thought content (Exhibits 1F and 10F).
>
> In interacting with others, the claimant has a moderate limitation. She alleges that when she interacts with others, she is fearful that others

4

might yell at her (Exhibit 10F). She reported having an anxious mood during a consultative evaluation (Exhibit 10F).

However, she is able to use public transportation, she goes shopping in stores, she does not have any problems getting along with friends, family, neighbors, or others, and she get along with authority figures very well (Exhibit 6E). A consultative psychologist who evaluated the claimant indicated the claimant was very cooperative, extremely pleasant, and had an adequate manner of interacting with others, an appropriate mode of dress, and satisfactory hygiene (Exhibit 10F).

The claimant's medical records indicate the claimant has been assessed with clinical examination findings of an appropriate mood, an appropriate affect, normal judgment, appropriate eye contact, a full range of affect, normal behavior, and a normal thought content (Exhibits 1F, 3F, 4F, 6F, and 10F).

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The has alleged difficulty focusing/concentrating, and difficulty learning (Exhibit 10F and Testimony of Heather Renee Carr). She alleges she does not finish tasks that she starts (Exhibit 11E). She alleges she cannot read a book for an hour because her attention and concentration are decreased, she cannot focus on tests for prolonged periods because of her depression and anxiety, her ability to focus is not very good, she cannot watch television, and she cannot read due to an inability to focus, pay attention, or concentrate (Heather Ranee Carr).

Cognitive testing indicated findings consistent with cognitive deficits, including a Full Scale IQ score of sixty-six, a processing speed index of sixty-eight, a working memory index of seventy- one, a perceptual reasoning index of seventy-three, and a verbal comprehension index of seventy-two (Exhibit 10F).

However, she reported that she enjoys watching television, movies, and playing games on her Ipad (Exhibit 10F). The claimant's medical records indicate the claimant has been assessed with clinical

examination findings of normal motor behavior, a coherent thought process, and a normal thought content (Exhibits 1F and 10F).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. She alleges she is only able to somewhat handle stress, she does not handle stress well, and she does not handle changes in her routine well (Exhibits 6E and 11E). She alleges that when she interacts with others, she is fearful that others might yell at her (Exhibit 10F). She reported having an anxious mood during a consultative evaluation (Exhibit 10F).

However, a consultative psychologist who evaluated the claimant indicated the claimant was very cooperative, extremely pleasant, and had an adequate manner of interacting with others, an appropriate mode of dress, and satisfactory hygiene (Exhibit 10F). She is able to use public transportation, she goes shopping in stores, she does not have any problems getting along with friends, family, neighbors, or others, and she get along with authority figures very well (Exhibit 6E). She is generally able to complete activities of daily living, including showering, bathing, and dressing herself daily, and she cleans, does laundry, shops, and goes out to eat with a friend (Exhibit 10F). The claimant's medical records indicate the claimant has been assessed with clinical examination findings of an appropriate mood, an appropriate affect, normal judgment, appropriate eye contact, a full range of affect, normal behavior, and a normal thought content (Exhibits 1F, 3F, 4F, 6F, and 10F).

(Tr. 21-22).

The ALJ's conclusion that Carr had moderate limitations in all four areas of mental functioning was supported by the medical opinion evidence. Specifically, state agency psychological consultant Dr. Thomas Fink opined that Carr would be moderately limited in her ability to understand and remember detailed instructions, explaining, "the claimant can understand and remember simple, one to two step

6

instructions." (Tr. 89). On reconsideration, Dr. John Gavazzi's opinion aligned with that of Dr. Fink, again stating the claimant's moderate limitations in understanding and remembering detailed instructions limited her to understanding and remembering one to two step instructions. (Tr. 114). Consultative examiner Dr. Stacy Trogner's opinion was even more restrictive, stating that Carr had marked limitations in her ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions due to her learning disability. (Tr. 1076).[2]

### C. **The ALJ Hearing and Decision**

It was against this medical backdrop that Carr's disability claim came to be heard by the ALJ on June 2, 2023, at which time Carr, her mother, and a Vocational Expert testified. (Tr. 38-70). The ALJ presented a hypothetical to the VE that included a limitation to two to three step tasks or instructions, but did not question the VE about whether a one to two step limitation would preclude her from performing the jobs the VE identified. (Tr. 67-68). Following this hearing, on July

---

[2]Carr's treating functional medicine practitioner, Charles Turnpaugh, also completed an RFC assessment that seemed to address both her mental and physical limitations. Turnpaugh is a Doctor of Chiropractic Medicine and the assessment primarily addresses her physical impairments, though he did opine on her mental functioning. Nonetheless, the ALJ acknowledged Turnpaugh's assessment but found it unpersuasive. Therefore, this assessment plays no role in our evaluation of this case.

27, 2023, the ALJ issued a decision denying Carr's application for benefits. (Tr. 14-37). In that decision, the ALJ first concluded that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2026, and had not engaged in substantial gainful activity since August 10, 2018, the alleged onset date. (Tr. 20). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Carr had the following severe impairments: irritable bowel syndrome, GERD, anxiety disorder, learning disability, borderline intellectual functioning, and attention deficit hyperactivity disorder. (Tr. 20). At Step 3, the ALJ determined that these impairments did not meet or medically equal the severity of any listed impairments. (Tr. 20).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), considering the plaintiff's limitations from her impairments, stating that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following: She can frequently stand; occasionally walk; can never climb ladders, ropes, or scaffolds or work unprotected heights; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; can tolerate occasional exposure to vibration or contact with moving mechanical parts; can maintain concentration, persistence, or pace for two hour segments sufficient to perform routine two to three step tasks or instructions; frequently interact with the public, supervisors, or coworkers; and can perform work that involves no more than frequent changes in work situations in a routine work setting.

(Tr. 23).

Inexplicably, despite both state agency mental consultants finding Carr was capable of following and remembering, at most, one to two step instructions and the examining consultant finding she had marked limitations in her ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions due to her learning disability, the ALJ concluded she could perform routine two to three step tasks or instructions. Thus, presented with this menu of options from the mental consultants whose opinions the ALJ found persuasive, the ALJ seemingly rejected the complete medical consensus in favor of his own interpretation of the evidence, an interpretation which indicated that Carr could do more than any credible expert found she was capable of performing.

Having made these findings, the ALJ concluded that Carr could not return to her past work but could perform other light exertional work in the national economy. (Tr. 30-31). Accordingly, the ALJ concluded that the plaintiff did not meet the stringent standard for disability set by the Act and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Carr contends that the ALJ erred in failing to address the medical consensus that Carr be limited to one to two step instructions. After a review of the evidence, we agree that the ALJ's omission of this limitation, and adoption of a less restrictive limitation of two to three step instructions was divorced from any medical opinion and unexplained in the ALJ's

analysis, leaving the factual, legal and logical bridge between the evidence and the ALJ's findings lacking. Therefore, we will remand this case for further consideration by the Commissioner.

## III.   Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his

decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000).

As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable
> meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d
> 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
> particular "magic" words: "Burnett does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the

ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim

made here, based upon alleged inadequacies in the articulation of a claimant's

mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the

United States Court of Appeals recently addressed the standards of articulation that

apply in this setting. In Hess the court of appeals considered the question of whether

an RFC which limited a claimant to simple tasks adequately addressed moderate

limitations on concentration, persistence, and pace. In addressing the plaintiff's

argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the <u>Hess</u> decision are straightforward. In formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

14

## B. **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant

15

is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)

16

(quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such

17

as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id.</u> at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 433 (3d Cir. 1999).

## C. <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions</u>

The plaintiff filed this disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the

Commissioner's regulations governing medical opinions changed in a number of
fundamental ways. The range of opinions that ALJs were enjoined to consider were
broadened substantially, and the approach to evaluating opinions was changed from
a hierarchical form of review to a more holistic analysis. As one court as aptly
observed:

> The regulations regarding the evaluation of medical evidence have been
> amended for claims filed after March 27, 2017, and several of the prior
> Social Security Rulings, including SSR 96-2p, have been rescinded.
> According to the new regulations, the Commissioner "will no longer
> give any specific evidentiary weight to medical opinions; this includes
> giving controlling weight to any medical opinion." <u>Revisions to Rules</u>
> <u>Regarding the Evaluation of Medical Evidence</u> ("<u>Revisions to Rules</u>"),
> 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), <u>see</u>
> 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner
> must consider all medical opinions and "evaluate their persuasiveness"
> based on the following five factors: supportability; consistency;
> relationship with the claimant; specialization; and "other factors." 20
> C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of
> medical sources, deference to specific medical opinions, and assigning
> "weight" to a medical opinion, the ALJ must still "articulate how [he
> or she] considered the medical opinions" and "how persuasive [he or
> she] find[s] all of the medical opinions." <u>Id</u>. at §§ 404.1520c(a) and
> (b)(1), 416.920c(a) and (b)(1). The two "most important factors for
> determining the persuasiveness of medical opinions are consistency and
> supportability," which are the "same factors" that formed the
> foundation of the treating source rule. <u>Revisions to Rules</u>, 82 Fed. Reg.
> 5844-01 at 5853.
>
> An ALJ is specifically required to "explain how [he or she] considered
> the supportability and consistency factors" for a medical opinion. 20
> C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to

20

"supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions.

Judicial review of this aspect of ALJ decision-making is still guided by several

settled legal tenets. First, when presented with a disputed factual record, it is well-

established that "[t]he ALJ – not treating or examining physicians or State agency

consultants – must make the ultimate disability and RFC determinations." Chandler

v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating

medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence

for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d

Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision

is accompanied by an adequate, articulated rationale, it is the province and the duty

of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without
> crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–
> 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015);
> Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that
> "SSR 96–2p does not prohibit the ALJ from crediting some parts of a
> treating source's opinion and rejecting other portions"); Connors v.
> Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June
> 10, 2011). It follows that an ALJ can give partial credit to all medical
> opinions and can formulate an RFC based on different parts from the
> different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–
> 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is

no evidence of any credible medical opinion supporting a claimant's allegations of

disability "the proposition that an ALJ must always base his RFC on a medical

opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

### D. **This Case Will Be Remanded.**

After a review of the record, we conclude that the ALJ's rejection of all the

medical opinion evidence in favor of his own interpretation of the evidence was

error. As previously discussed, despite the two state agency medical experts whose

22

opinions the ALJ found persuasive clearly stating that Carr would be moderately limited in her ability to understand and remember detailed instructions, explaining, "the claimant can understand and remember simple, one to two step instructions." (Tr. 89, 114), and an even more restrictive third credible opinion of the consultative examiner finding Carr would be markedly limited in understanding complex instructions, the ALJ crafted a mental RFC which concluded Carr could perform "routine two to three step tasks or instructions." This mental RFC was untethered from any of the opinion evidence and the factual basis for this decision is elusive, since the ALJ failed to explain in body of the RFC assessment why Carr was not subject to the limitations opined by the experts but instead could perform more complex two to three step tasks.

This conclusion runs afoul of several well-settled legal tenets governing Social Security litigation. First, as enumerated above, an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. Furthermore, the ALJ must also "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck, 181 F.3d at 433. Moreover, it is well-settled that an ALJ should refrain from substituting his own lay opinion in place of a medical opinion. Morales 225 F.3d at 319. These mandates apply here in the context of the ALJ's assessment

of the medical opinion evidence. Thus, although it is the province of the ALJ to decide which parts of the medical opinion evidence to credit, and an ALJ is not required to adopt every limitation opined by the experts whose opinions he found persuasive, an ALJ also "cannot reject evidence for no reason or for the wrong reason." Morales, 225 F.3d at 317. This view is equally supported under the mental RFC paradigm developed in Hess, which does not require the ALJ to adhere to a particular format in conducting the mental RFC analysis, but still requires a valid explanation grounded in the evidence.

In the instant case, the ALJ found Carr was moderately limited in all four "paragraph B" areas of mental functioning. The ALJ then analyzed the longitudinal medical record documenting Carr's mental impairments but found Carr's statements regarding the limiting effects of these impairments were not entirely consistent with the record of mental assessments showing appropriate mood, affect, and behavior. (Tr. 26). Nonetheless, the ALJ acknowledged cognitive testing indicating a borderline IQ and cognitive deficits. (Id.) Furthermore, the ALJ found the opinions of the state agency psychological consultants, which clearly indicated Carr should be limited to one to two step instructions, persuasive. (Tr. 28-29). The ALJ then crafted a relatively complex mental RFC to account for these limitations, but instead of limiting Carr to one to two step instructions, inexplicably and seemingly based

upon no evidence in the record, concluded she could perform two or three step tasks. (Tr. 23). This unsupported RFC limitation is neither explained nor grounded in the evidence and leaves the Court to conclude the ALJ unilaterally rejected all medical opinions in favor of his own subjective impressions. This was error.[3] See Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016) (citing Thanh Tam Vo v. Colvin, No. 1:14–CV–00541–GBC, 2015 WL 5514981, at *4 (M.D. Pa. Sept. 15, 2015)) (remanding where ALJ completely rejected all medical opinions, even the one that supported the ALJ's RFC).

Moreover, this error was not harmless where the ALJ concluded that Carr could perform work at an SVP 2 level and did not question the vocational expert

---

[3] We also reject the Commissioner's argument that the ALJ was only required to consider the final narrative portion of the mental RFC assessments. First, under the regulations an ALJ must consider "all the relevant medical and other evidence" that was available to the ALJ. 20 C.F.R. § 404.1545(a)(3) (emphasis added). Moreover, this Court has concluded that, even considering the POMS guidance cited by the Commissioner, section I of the RFC assessment encompassing the "worksheet" is a "medical opinion" under the regulations. Hickman v. Comm'r of Soc. Sec., No. 3:16-CV-00931-GBC, 2017 WL 1217184, at *9 (M.D. Pa. Mar. 31, 2017) (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). And, finally, as the plaintiff highlights, the instructions on the mental residual functional capacity form itself state, "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s)," which could include the narrative explanations on the worksheet form where both state agency psychologists noted a limitation to simple one to two step instructions. (Tr. 89).

about whether a limitation to one-to-two step tasks would preclude her from work at that reasoning level. We are without the benefit of a vocational expert's testimony regarding whether a limitation to one to two step tasks would preclude Carr from the SVP 2 level occupations identified in the ALJ's decision but note that other courts have found that Reasoning Levels 2 and 3 are not consistent with "simple, one-to-two step tasks." See Daniel M. v. Kijakazi, No. 2:21-CV-243, 2023 WL 154909, at *3 (D. Vt. Jan. 11, 2023) (collecting cases).

Simply put, more was needed here by way of explanation on the part of the ALJ to support the decision Carr could perform two to three step tasks. Since the ALJ's burden of articulation is not met in the instant case, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV.  **Conclusion**

Accordingly, for the foregoing reasons, the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner

denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

_s/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

DATED: October 7, 2025